In re Rickie Allen WILSON, Alicia Stephens Wilson, Debtors.

Rickie Allen Wilson, Plaintiff,

v.

United States of America, Internal Revenue Service, Defendant.

Bankruptcy No. 06–10026 MER.
Adversary No. 06–1425 MER.

United States Bankruptcy Court, D. Colorado.

July 30, 2008.

Rickie Allen Wilson, Pine, CO, pro se.

Philip E. Blondin, U.S. Department of Justice, Chad Nardiello, Washington, DC, for Defendant.

## ORDER

MICHAEL E. ROMERO, Bankruptcy Judge.

THIS MATTER comes before the Court on the Cross–Motions for Summary Judgment filed by the Plaintiff and the Defendant and the parties' Responses thereto. Although the Court had set the matter for oral argument, on further consideration, the Court finds no argument is necessary and the matter may be settled on the pleadings filed.[1]

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), as it involves the determination of the dischargeability of a particular debt.

---

1. *See Geear v. Boulder Community Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (hearing for summary judgment may consist of court's review of documents submitted by parties).

## PROCEDURAL BACKGROUND

Debtors Rickie Allen Wilson and Alicia Stephens Wilson (the "Debtors" or the "Wilsons") filed their voluntary Chapter 7 petition on January 5, 2006. On March 5, 2006, Rickie Wilson ("Wilson" or the "Plaintiff") filed an adversary complaint (the "Complaint") against the United States of America, Internal Revenue Service, the Commissioner of Internal Revenue, and Revenue Officer Ginger Wray. On August 10, 2006, the Court entered an Order dismissing all claims except the second claim, which seeks a declaration that all sums allegedly owing to the Internal Revenue Service by Wilson are dischargeable, and dismissed all Defendants except the United States. *See Docket No. 15.* On October 27, 2006, the IRS[2] filed an Answer to the remaining claim. On January 15, 2008, each party filed a motion for summary judgment (the "Wilson Motion" and the "IRS Motion," collectively, the "Motions"), and each party has subsequently responded to the opposing party's Motion.

### A. The Wilson Motion and the IRS's Response

Wilson asserts the "records of assessment" provided by the IRS and attached to the Wilson's Opening Brief in Support of Motion for Summary Judgment ("Wilson's Opening Brief") lack the signature of an "IRS Assessment Officer" under the Internal Revenue Code and pertinent regulations.[3] According to Wilson, they therefore do not show a "legally sustainable" tax liability.

The IRS contends Form 4340 meets Treasury Regulations as long as it is "validly executed and certified." It goes on to argue the signing of the Certificates by Ms. Drake is sufficient to "validly execute and certify" the records.

The IRS concedes it did not provide "records of assessment" for 1988 and 1989, making moot the issue of dischargeability for those years. Similarly, the IRS admits the taxes, penalties, and interest for 1990, 1991, and 1993 were assessed May 13, 1996, beyond the statute of limitations, and are dischargeable. It therefore appears a judgment may be entered in favor of Wilson for tax years 1988, 1989, 1990, 1991 and 1993.

However, the IRS continues to assert the nondischargeability of its claims for tax years 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002 and 2003. The IRS also states Wilson filed defective returns for tax years 2004 and 2005, and its claims for those tax years are nondischargeable. According to the IRS, tax years 2004 and 2005 are "assessable," although not yet "assessed."

### B. The IRS's Motion[4] and Wilson's Response

The IRS Motion states its claims for tax years 1994, 1995, and 1996 are exempt

---

2. For clarity, Defendant United States of America shall herein be referred to by the name of its agency, the Internal Revenue Service ("IRS").

3. Also attached to Wilson's Opening Brief are Certificates of Official Records (the "Certificates"), dated March 17, 2006, signed by Linda L. Drake, Supervisor Accounting Technician. The Certificates indicate the accompanying Forms 4340 are true transcripts of records for Wilson. The Certificates pertain

to tax years 1990, 1991, 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002 and 2003.

4. Numerous "declarations" are attached as part of the IRS Motion. For reference purposes herein, each declaration shall be referred to as "[declarant last name] Declaration" and exhibits attached to such declarations shall be referred to as "[declarant last name], Exhibit ——."

from discharge under 11 U.S.C. § 523(a)(1)(B)[5] because Wilson did not file tax returns for those years. Further, it contends its claims for tax years 1997, 1998, 1999, 2000, and 2001 are exempt from discharge under § 523(a)(1)(B) and (C) because the Debtor did not file acceptable tax returns for those years, and willfully attempted to evade and defeat tax liability by filing fraudulent returns. In addition, the IRS alleges its claims for tax penalties for tax years 1997, 1998, and 1999 are nondischargeable.

The IRS also asserts its claims for tax years 2002, 2003, 2004, and 2005 are nondischargeable. *See Cuin Declaration,* Exhibit 1. As noted above, the IRS concedes it has not assessed liability for 2004 or 2005, but maintains such taxes are assessable and should be considered in the Court's determination of nondischargeability.

Wilson's response states no tax liability exists. Wilson contends he was not an "employee" and did not earn wages for purposes of filing a tax return or paying federal taxes. He alleges the major fact in this case, whether he has any "lawful and procedurally correctly imposed federal tax liabilities," is still at issue and prevents summary judgment.[6]

Wilson refers the Court to his discovery responses filed earlier in the case, in which he raises a number of additional arguments. In particular, he states the Sixteenth Amendment to the United States Constitution[7] only applies to corporations and such "federally protected activities" as alcohol production, with the result he is not required to pay income taxes.

## BACKGROUND FACTS

Although lengthy pleadings have been filed by both parties, the facts relevant to the pending Motions are straightforward. The parties do not dispute the IRS produced documents identified as Form 4340 "Records of Assessment," as well as the accompanying Certificates, for tax years 1990, 1991, 1993, 1994, 1996, 1997, 1998, 1999, 2000, 2001, 2002, and 2003. *Wilson's Opening Brief,* ¶ 2. Wilson's deposition[8] reflects he worked, either as a sole proprietor or an employee of various entities, during 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, and 2003. Further, he earned wages from such employment. *Wilson Deposition,* p. 74, line 16–p. 75, line 12; p. 76, line 25–p. 77, line 12; p. 79, line 14–p. 81, line 25; p. 150, line 17–p. 151, line 2; p. 151, lines 13–20; p. 218, line 25–p. 219, line 3; p. 226, lines 1–13; p. 231, line 22–p. 232, line 16; p. 234, lines 14–19; p. 236, lines 7–15; p. 284, lines 14–20; p. 286, lines 4–17; *Neal Declaration, Osse Declaration, Cuin Declaration, Rodriguez Declaration, Gann Declaration.* Wilson further indicated he did not file federal tax returns for tax years 1994, 1995, and 1996. *Wilson Deposition,* p. 100, line 24–p. 101, line 25. On three separate occasions (December 12, 2002, February 28, 2005, and

---

**5.** Unless otherwise specified, all future statutory references in the text are to title 11 of the United States Code.

**6.** He further argues the IRS has improperly referred to him as a tax protestor, citing a Tax Code provision which prohibits such designations. However, the Court does not find this relevant to the discharge ability issues presented.

**7.** The Sixteenth Amendment states:

The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration.
U.S. Const. amend. XVI.

**8.** Attached to *Nardiello Declaration* as Exhibit 3. For clarity, the document is hereinafter referred to as "Wilson Deposition."

September 26, 2005), Wilson filed a tax return for tax year 1997, each indicating no tax liability. *Neal Declaration*, Exhibits 6–8. On February 28, 2005, Wilson filed returns for tax years 1998 and 1999, indicating no tax liability. *Neal Declaration*, Exhibits 11 and 12. On June 6, 2005 and November 11, 2005, the IRS assessed penalties with respect to the 1997, 1998 and 1999 returns filed in 2005. *Neal Declaration*, Exhibit 2.

## DISCUSSION

### A. Standard for Summary Judgment

A court may grant summary judgment pursuant to FED.R.CIV.P. 56(c), made applicable to bankruptcy proceedings under FED. R. BANKR.P. 7056, where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Cross-motions for summary judgment are to be treated separately; the denial of one does not require the granting of another. *See SEC v. American Commodity Exchange, Inc.*, 546 F.2d 1361, 1365 (10th Cir.1976). *See also* C. Wright & A. Miller, *Federal Practice and Procedure*, § 2720, at 464 (1973). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case, identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrates the absence of genuine issues for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). However, not every disputed fact creates a genuine issue of material fact requiring the denial of summary judgment. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Irrelevant and unnecessary facts should have no bearing on a trial court's determination on a motion for summary judgment. *Id.* at 248, 106 S.Ct. 2505.

As noted above, the parties agree Wilson failed to file returns for tax years 1994, 1995, and 1996. Further, they agree documents purporting to be tax returns were filed for the other tax years at issue, and that the IRS generated Form 4340, together with Certificates, for tax years 1990, 1991, 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002 and 2003. Evidence attached to the IRS's Motion shows Wilson was employed and earned income in 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002 and 2003. Although the parties dispute the legal effect of such facts, no additional facts are necessary for the Court to be able to determine the dischargeability of the IRS's claim. Therefore, no material issues of fact exist, and the Court may address whether the parties may be granted judgment as a matter of law.

### B. Wilson Motion: Has the IRS Failed to Demonstrate Tax Liability Through Lack of Properly–Executed Tax Assessments?

██ The Court has examined the copies of Form 4340 and the Certificates of Assessments submitted by the IRS. The Court finds Wilson's argument that such documents do not meet statutory and regulatory requirements to be without merit.

The United States Tax Code, 26 U.S.C. § 6203 provides:

The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary. Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of the assessment.

26 U.S.C. § 6203. The Treasury Regulation implementing this section of the Tax Code states:

The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment. The amount of the assessment shall, in the case of tax shown on a return by the taxpayer, be the amount so shown, and in all other cases the amount of the assessment shall be the amount shown on the supporting list or record. The date of the assessment is the date the summary record is signed by an assessment officer. If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed.

26 C.F.R. § 301.6203-1 (2003).

The Tenth Circuit Court of Appeals has held Form 4340 meets the requirements of the Treasury Regulation as long as it is "validly executed and certified." *March v. Internal Revenue Service*, 335 F.3d 1186, 1188-89 (10th Cir.2003). In addition, the Court found Certificates of Assessment attached to Forms 4340 constitute "presumptive proof of valid assessment." *Id.* at 1188 (*quoting Guthrie v. Sawyer*, 970 F.2d 733, 737 (10th Cir.1992)). *See also United States v. Chisum*, 502 F.3d 1237, 1244 (10th Cir.2007) (Certificates of Assessment are sufficient to establish the propriety of tax assessments in the absence of conflicting evidence).

The forms provided to Wilson therefore establish a presumption the assessments were validly signed and certified. *March*, 335 F.3d at 1189. Wilson has presented no evidence to suggest the signature of Ms. Drake was not valid, or that she was not an "assessment officer" under 26 C.F.R. § 301.6203-1. For these reasons, the Court finds Wilson has not set forth grounds for judgment as a matter of law, and his Motion must be denied.

**C. IRS Motion: Existence of Tax Debt and Dischargeability Under § 523(a)(1).**

Section 523(a)(1) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, or equivalent report or notice, if required—

(i) was not filed or given; or

(ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully

attempted in any manner to evade or defeat such tax . . .

11 U.S.C. § 523(a)(1).

*1. Wilson Failed to File Required Returns for Tax Years 1994, 1995 and 1996.*

■ Wilson admits he did not file federal tax returns for tax years 1994, 1995 nor 1996, and stated he did not know why he had not done so. *Wilson Deposition,* p. 101, lines 15–16. However, he indicated he had income in 1994, 1995, and 1996 from his sole proprietorship, R.A. Wilson & Associates. *Wilson Deposition,* p. 69, line 5– p. 77, line 4, and Exhibit 1 to Wilson Deposition. In addition, in 1994, Wilson earned $2,229 performing work for Phoenix Computer Systems. *Neal Declaration,* Exhibit 3. In 1995, he earned $2,778 performing work for Vogelzang & Associates, Inc. *Neal Declaration,* Exhibit 4, *Wilson Deposition,* p. 148, lines 6–19. In 1996, he earned $1,030 performing work for Vogelzang & Associates, Inc. *Neal Declaration,* Exhibit 5; *Wilson Deposition,* p. 150, line 24–p. 151, line 5.

According to 26 U.S.C. § 6012(a)(1)(A), tax returns are generally required from every individual who has, for a taxable year, gross income equal to or exceeding the exemption amount. As a general rule, the exemption amount is $2,000. 26 U.S.C. § 151(d)(1). However, any individual with net earnings from self-employment of $400 or more shall also file a return. 26 U.S.C. §§ 1401 and 6017. Therefore, Wilson was required to file a return for tax years 1994, 1995 and 1996, but did not do so. *See Grynberg v. United States (In re Grynberg),* 142 B.R. 415, 418 (D.Colo.1991), *aff'd,* 986 F.2d 367 (10th Cir. 1993), *cert. denied,* 510 U.S. 812, 114 S.Ct. 57, 126 L.Ed.2d 27 (1993). Moreover, the fact the IRS filed substitute returns on Wilson's behalf does not excuse his failure to file returns. *Bergstrom v. United States (In re Bergstrom),* 949 F.2d 341, 343 (10th Cir.1991); *Ehrig v. United States (In re Ehrig),* 308 B.R. 542, 549 (Bankr.N.D.Okla.2004); *Pruitt v. United States (In re Pruitt),* 107 B.R. 764, 766 (Bankr.D.Wyo.1989).

*2. Wilson Filed Improper Returns or Submissions Not Constituting Returns for Tax Years 1997, 1998, 1999, 2000, and 2001.*

On about January, 2003, Wilson filed federal income tax returns for tax years 1997, 2000, and 2001, on which he took a deduction for his own labor. *Neal Declaration,* ¶ 4, and Exhibit 1. Between November 2004 and February 2005, Wilson filed federal income tax returns for tax years 1997, 1998, 1999, 2000, and 2001, on which he failed to list his wages. *Wilson Deposition,* p. 188, line 1–p. 192, line 25; p. 221, line 20–p. 224, line 23; p. 230, lines 2– 5; p. 242, line 24–p. 246, line 20; p. 252, lines 1–5; p. 269, line 20–p. 272, line 9; p. 279, line 16–p. 283, line 9; and Exhibit 13 to Deposition; *Neal Declaration,* Exhibits 6–17. However, as noted above, he earned wages in the years from 1997–2001. In addition, Wilson altered the jurat on his returns for tax years 1997 through 2001 by placing the words "without prejudice" on the signature lines. *Neal Declaration,* Exhibits 7–8, 11–12, 14, and 17.

■ In determining whether a document constitutes a return for purposes of § 523(a)(1), courts have most often used a four-part test synthesized by the Tax Court from the Supreme Court's holdings in *Germantown Trust Co. v. Commissioner,* 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940) and *Zellerbach Paper Co. v. Helvering,* 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934). *Beard v. Commissioner,* 82 T.C. 766, 774–79, 1984 WL 15573 (1984), *aff'd,* 793 F.2d 139 (6th Cir.1986) (per cu-

riam). Under *Beard,* a document qualifies as a return if (1) it purports to be a return; (2) it is executed under penalties of perjury; (3) it contains sufficient data to allow calculation of tax; and (4) it represents an "honest and reasonable attempt to satisfy the requirements of the tax law." *Id.,* at 777. *See, e.g., Colsen v. United States (In re Colsen),* 446 F.3d 836, 839 (8th Cir. 2006); *United States v. Hindenlang,* 164 F.3d 1029, 1033–34 (6th Cir.1999) (adopting the four-part *Beard* test).

█ In the instant case, the first requirement has been met as the documents submitted by Wilson purport to be returns and appear on the IRS's forms. With respect to the second requirement, however, the Internal Revenue Code requires execution of an unqualified jurat. 26 U.S.C. §§ 6061 and 6065. Any addition to or deletion from the jurat qualifies it and renders it ineffective. *Carroll v. United States (In re Carroll),* 310 B.R. 621, 625–626 (Bankr.D.Minn.2004); *Pierce v. U.S. (In re Pierce),* 184 B.R. 338, 342 (Bankr. N.D.Iowa 1995) (*citing Schmitt v. United States (In re Schmitt),* 140 B.R. 571, 572 (Bankr.W.D.Okla.1992)). The altered jurats on Wilson's forms thus make the returns ineffective, and arguably cause them to fail to meet the second *Beard* requirement. However, since the Court finds Wilson's submissions do not meet the third and fourth *Beard* requirements, it need not determine the specific question of whether, and to what degree, the alteration of a jurat may prevent a purported return from being executed under penalties of perjury.

As to the third *Beard* requirement, Wilson's taking a "deduction" for "labor" in some of his purported returns and his failing to provide wage information on others, resulted in those documents lacking sufficient information for the calculation of tax. A tax based on income less appropri-

ate deductions cannot be determined from documents which do not state income or which reflect improper deductions. *See United States v. Moore,* 627 F.2d 830, 835 (7th Cir.1980) (a taxpayer has failed to file a return when it is apparent that he has not attempted to file forms accurately disclosing his income); *United States v. Brown,* 600 F.2d 248, 251 (10th Cir.), *cert. denied,* 444 U.S. 917, 100 S.Ct. 233, 62 L.Ed.2d 172 (1979) (a form giving some small income amounts in "constitutional" dollars was tantamount to one giving no information, and would be treated as such); *United States v. Porth,* 426 F.2d 519, 523 (10th Cir.1970) (a return which does not contain any information relating to the taxpayer's income from which the tax can be computed is not a return within the meaning of the Internal Revenue Code or the regulations).

Regarding the fourth *Beard* requirement, the Court finds Wilson's repeated filing of returns with inaccurate information, inadequate information, and altered verifications supports a finding he did not make honest and genuine attempts to comply with tax law. *See Moore,* 627 F.2d at 835 ("In our self-reporting tax system the government should not be forced to accept as a return a document which plainly is not intended to give the required information."); *Brumbaugh v. United States (In re Brumbaugh),* 267 B.R. 800, 810 (Bankr. S.D.Ohio 2001) (by filing altered forms and failing to cooperate with the IRS, debtors attempted to avoid rather than satisfy the requirements of the tax law); *Beard,* 82 T.C. at 779 (an altered form constituted conspicuous protest against the payment of tax, intended to deceive return-processing personnel into refunding the withheld tax, and did not meet the requirement for an honest and reasonable attempt to satisfy tax law).

For these reasons, the Court finds Wilson's documents submitted for tax years 1997 through 2001 did not constitute returns.

### 3. Wilson Willfully Attempted to Evade or Defeat Tax Liability, and Filed Fraudulent Returns.

■ The above analysis also applies to the Court's consideration of whether Wilson's actions constituted a willful attempt to evade or defeat tax under § 523(a)(1)(C). The Tenth Circuit has held a debtor's actions are willful under § 523(a)(1)(C) if they are done voluntarily, consciously, or knowingly and intentionally. *Dalton v. Internal Revenue Service*, 77 F.3d 1297, 1302 (10th Cir.1996) (*citing Toti v. The United States (In re Toti)*, 24 F.3d 806, 809 (6th Cir.1994)). The Tenth Circuit also noted "Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished . . ." *Id.* at 1301.

■ Here, Wilson's willfulness in attempting to evade or defeat taxes is shown by the fact Wilson (1) had a duty to file returns; (2) knew he had such a duty, as demonstrated by his submission of deficient documents; and (3) voluntarily and intentionally failed to carry out that duty, by failing to file returns, or by filing deficient returns. *See Bruner v. United States (Matter of Bruner)*, 55 F.3d 195, 197 (5th Cir.1995). "A pattern of nonpayment . . . particularly when accompanied by a pattern of failure to file returns and coupled with conduct obviously aimed at concealing income and assets, certainly constitutes a willful attempt to evade or defeat taxes for purposes of § 523(a)(1)(C)." *Id.* at 200.

■ Intent to evade taxes may be shown by circumstantial evidence and reasonable inferences drawn from "badges of fraud." *Crawley v. United States (In re Crawley)*, 244 B.R. 121, 129 (Bankr. N.D.Ill.2000) (*citing Berzon v. United States (In re Berzon)*, 145 B.R. 247, 250 (Bankr.N.D.Ill.1992)). Such "badges" include repeated understatements of income, failure to file tax returns, and failure to cooperate with federal tax authorities. *Id.* Further, "failure to file a tax return and failure to pay a tax fall within the definition in § 523(a)(1)(C) of a willful attempt to evade or defeat a tax liability." *Toti*, at 809. *See also Steinkrauss v. United States (In re Steinkrauss)*, 313 B.R. 87, 99 (Bankr.D.Mass.2004) (conducting an analysis of circuit court cases and finding tax debts nondischargeable where the debtors had the sophistication and expertise to file and pay the returns but instead used their assets to fund real estate investments, choosing to ignore their tax responsibilities).

In the case at bar, Wilson has failed to file required tax returns, failed to claim earned income, failed to pay taxes for the years in question, and has, by filing inadequate returns, failed to cooperate with the taxing authorities. Therefore, the Court finds he has wilfully attempted to evade or defeat taxes for tax years 1997 through 2001.

■ The IRS further claims Wilson has filed fraudulent returns. No Tenth Circuit cases discuss what constitutes a fraudulent return under § 523(a)(1)(C), but cases from other circuits have focused on (1) knowledge of the falsehood of the return; (2) an intent to evade taxes; and (3) an underpayment of the taxes. *United States v. Krause*, 386 B.R. 785, 825 (Bankr. D.Kan.2008) (*collecting cases*). These Courts have also set forth additional "badges of fraud" signaling a fraudulent return, including: (a) consistent understatement of income; (b) failure to maintain adequate records; (c) failure to file

tax returns; (d) implausible or inconsistent behavior by a debtor; (e) concealing assets; (f) failure to cooperate with taxing authorities; and (g) unreported income from an illegal activity. *Id.*

 Based on the evidence presented by the parties in the Motions, the Court finds Wilson exhibits the following "badges of fraud" in filing returns. He has repeatedly understated or refused to state his income, has failed to file tax returns, and has altered both the W–2 Forms submitted to his employers and the purported tax returns submitted to the IRS. These actions demonstrate a failure to cooperate with the taxing authorities. There is little or no evidence as to the other "badges." However, the Court finds that Wilson has shown each of the three major factors set forth in *Krause:* He knew he earned income but failed to report it or reported it inaccurately, indicating he knew the falsehood of his purported returns. He showed intent to evade taxes for the reasons stated above. Finally, he failed to pay taxes on his income, resulting in no payment or underpayment of taxes. For these reasons, the Court finds Wilson made fraudulent returns within the meaning of § 523(a)(1)(C) for tax years 1997 through 2001.

### 4. Penalties and Interest on Penalties Are Dischargeable Under Tenth Circuit Law.

 Section 523(a)(7)(B) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition . . .

As best stated by the Eleventh Circuit Court of Appeals:

While the language of this subsection frames nondischargeable tax penalties as an exception to an exception to an exception, once the triple negative is taken into account the meaning of the provision gains clarity. A tax penalty is discharged if the tax to which it relates is discharged (in the precise terms of the statute, not nondischargeable) *or* if the transaction or event giving rise to the penalty occurred more than three years prior to the filing of the bankruptcy petition. Since the statute uses the disjunctive, a tax penalty that does not qualify for discharge under one of the two aforementioned circumstances may still qualify under the other.

*Burns v. United States (In re Burns),* 887 F.2d 1541, 1544 (11th Cir.1989) (footnote omitted).

Therefore, if a tax liability was incurred more than three years prior to the filing of the bankruptcy petition, a penalty thereon is dischargeable. The IRS alleges penalties and interest assessed against Wilson for tax years 2000 through 2001 are nondischargeable under § 523(a)(7)(B), because they were incurred less than three years prior to the bankruptcy petition. The IRS further argues the "events" leading to the assessment of penalties for tax years 1997, 1998, and 1999 were the 2005 filing of the deficient returns, rendering those penalties nondischargeable under § 523(a)(7)(B).

■ The Tenth Circuit has made it clear § 523(a)(7)(A) and (B), being separated by the word "or," must be read in the disjunctive. *Roberts v. United States (In re Roberts)*, 906 F.2d 1440, 1443 (10th Cir. 1990). Accordingly, a tax penalty is dischargeable if (A) it is related to a dischargeable tax liability; *or* (B) it was imposed with respect to a transaction or event that occurred before three years before the petition date. The Court has found, for the reasons stated above, the tax liabilities for the years 1994 through 2001 are nondischargeable under § 523(a)(1). Thus, the penalties associated with any of those years do not fall under clause (A) of § 523(a)(7).

The remaining issue, then, is whether the 2005 filing of fraudulent returns for tax years 1997, 1998 and 1999, following which penalties were assessed, constitute "events" for purposes of § 523(a)(7)(B). If they do, the penalties are nondischargeable as being imposed within the three-year period before bankruptcy.

Case law in this area does not provide specific guidance as to what constitutes the "event" for purposes of § 523(a)(7)(B) with respect to a penalty imposed, as here, under 26 U.S.C. § 6702. The majority of cases find subsection (B) discharges any three-year-old tax penalty even if the underlying tax is not discharged, and hold the debtor's failure to file a proper return by the due date constitutes the "transaction or event" giving rise to the penalty. *See Roberts*, 906 F.2d at 1444; *Burns*, 887 F.2d at 1544; *Frary v. United States (In re Frary)*, 117 B.R. 541, 549 (Bankr.D.Alaska 1990). A second line of cases applies subsection (B) only when the penalty does not relate to a tax. *See, e.g., Cassidy v. Commissioner of Internal Revenue*, 814 F.2d 477, 480–481 (7th Cir.1987); *Carlton v. Internal Revenue Service (In re Carlton)*, 19 B.R. 73, 74 (D.N.M.1982); and

*Ferrara v. United States Department of Treasury (In re Ferrara)*, 103 B.R. 870, 873 (Bankr.N.D.Ohio 1989).

This Court is bound by the holdings of the Tenth Circuit Court of Appeals. In *Roberts*, the Tenth Circuit affirmed the Bankruptcy Court for the Northern District of Oklahoma, which had found tax penalties assessed with respect to taxes payable more than three years prepetition to be dischargeable, even though the debtor had not filed any returns for the tax years in question and the underlying tax debts were thus nondischargeable. *Roberts*, 906 F.2d at 1445. The Bankruptcy Court in the *Roberts* case put it most clearly when it stated § 523(a)(7)(B) provides tax penalties are dischargeable if they apply to "taxes that are over three years old at the time the petition for relief was filed." *Roberts v. Internal Revenue Service (In re Roberts)*, 94 B.R. 707, 709 (Bankr.N.D.Okla.1989).

Thus, under the Tenth Circuit's *Roberts* opinion, the events giving rise to penalties asserted for tax years 1997, 1998, and 1999 were Wilson's failure to file timely returns, rendering the penalties dischargeable under § 523(a)(7)(B). The IRS has presented no contrary authority to support its position, so the Court will deny summary judgment as to these penalties. In addition, the IRS concedes penalties related to tax years 2000 and 2001 were imposed with respect to a transaction occurring more than three years before the petition. Therefore, as a matter of law, the IRS is not entitled to judgment as to penalties associated with tax years 2000 and 2001 and such penalties are dischargeable.

5. *The IRS's Tax Claims for Tax Years 2002 and 2003 Are Nondischargeable.*

Under § 523(a)(1)(A), debts of the type listed in § 507(a)(8) are excepted from dis-

charge. Section 507(a)(8)(A)(i) refers to claims for "a tax on or measured by income or gross receipts for taxable year ending on or before the date of the filing of the petition, for which a return, if required, is last due, including extensions, after three years before the filing of the petition . . ." since the tax liabilities for tax years 2002 and 2003 accrued less than three years before Wilson's petition, they are excepted from discharge. "If the IRS has a claim for taxes for which the return was due within three years before the bankruptcy petition was filed, the claim enjoys eighth priority under [11 U.S.C.] § 507(a)(8)(A)(i) and is nondischargeable in bankruptcy under § 523(a)(1)(A)." *Young v. United States*, 535 U.S. 43, 46, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002); *see also Tuttle v. United States (In re Tuttle)*, 291 F.3d 1238, 1240–41 (10th Cir.2002). Accordingly, Wilson's tax liabilities for tax years 2002 and 2003 are nondischargeable, and summary judgment with respect to these liabilities may enter in favor of the IRS. In addition, based on the discussion above, any penalties associated with tax years 2002 and 2003 are nondischargeable under § 523(a)(7)(A).

6. *Summary Judgment is Not Warranted Regarding the IRS's Tax Claims for Tax Years 2004 and 2005.*

 The Wilson Motion asserts the IRS has failed to provide adequate records of assessment for tax years 1988 through 2005. *Wilson Motion*, ¶ 7. Wilson filed two returns for tax year 2004, and one return for tax year 2005, all reporting no income. *Arrington Declaration*, attached to IRS's Response to Wilson's Motion for Summary Judgment, ¶ 9. Wilson's employer's records reflect Wilson earned wages in both 2004 and 2005. *Cuin Declaration*, Exhibits 11 and 12. In its Response to the Wilson Motion, the IRS states it is con-

ducting an investigation of Wilson's tax liability for 2004 and 2005, but argues any liability later determined to be owing for those years is nondischargeable under §§ 523(a)(1)(A) and 507(a)(8).

The Court declines to issue what amounts to an advisory opinion on the matter of taxes for tax years 2004 and 2005. Although the Wilson Motion alleges the IRS has not provided valid assessments for certain years, including tax years 2004 and 2005, such allegations do not constitute additional claims. The IRS admits it has not determined tax liability for tax years 2004 and 2005, and so has not yet asserted any claims for those years. A claim that has not yet been asserted cannot comprise an "allowed claim" under § 507(a)(8), and § 523(a)(1)(A) is, at least at present, inapplicable. Thus, the Court will deny summary judgment as to claims involving tax years 2004 and 2005.

### CONCLUSION

For the above reasons,

IT IS ORDERED that Wilson's Motion for Summary Judgment is GRANTED, as conceded by the IRS, for tax years 1988, 1989, 1990, 1991, and 1993.

IT IS FURTHER ORDERED that Wilson's Motion for Summary Judgment is DENIED as to tax years 1994 through 2003.

IT IS FURTHER ORDERED that the IRS's Motion for Summary Judgment is GRANTED as to tax years 1994 through 2003, and that any tax liability assessed for those years is nondischargeable pursuant to 11 U.S.C. § 523(a)(1).

IT IS FURTHER ORDERED that the IRS's Motion for Summary Judgment is DENIED as to penalties and interest relating to tax years 1997, 1998, 1999, 2000, and 2001.

IT IS FURTHER ORDERED that the IRS's Motion for Summary Judgment is GRANTED as to penalties and interest relating to tax years 2002 and 2003, and such penalties and interest are nondischargeable pursuant to 11 U.S.C. § 523(a)(7)(A).

IT IS FURTHER ORDERED that the IRS's request for summary judgment as to tax years 2004 and 2005, contained in its Response to Wilson's Motion, is DENIED.

THIS ORDER constitutes a full and complete adjudication of all pending claims in this adversary proceeding.